**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **No. 26-CR-135 (CRC)** |
| | ) | |
| **DION DEAN** | ) | |
| | ) | |

**MR. DEAN'S MOTION TO SUPPRESS**

Mr. Dion Dean, through undersigned counsel and pursuant to the Fourth Amendment of the United States Constitution, respectfully moves this Court to suppress all evidence recovered as a result of the unlawful seizure and search of Mr. Dean's person by officers of the Metropolitan Police Department on March 24, 2026.

**BACKGROUND**

Mr. Dean is charged in a three-count indictment with unlawful possession of ammunition in violation of 18 U.S.C. § 922(g)(1) and two related D.C. Code firearms offenses. These charges arose out of a stop and subsequent search of Mr. Dean by Officer French of the Metropolitan Police Department of March 24, 2026. On that date, officers were dispatched to 2111 Suitland Terrace SE in Washington DC after a male (with a female in the background) had called 911 at 3:52 p.m. because a woman asked him to call on her behalf to report that *two* men were following her. The male caller indicated that the woman was wearing a pink top and pink shorts, that he (the caller) was in front of 2111 Suitland Terrace, and that he had seen the woman go inside. The female in the background eventually joined the call and supplied more information to the 911 dispatcher – namely, that the woman had followed one of the men down the street "past the bus stop", and that the man she followed had dark skin and had been dressed in black with a black hat. The female caller also shared that the woman had "started chasing" the other

man, suggesting that neither of the men remained in the area. In a bizarre game of telephone, this call was conveyed over the radio by dispatch as a call for an indecent exposure at 2111 Suitland Terrace, despite no such call seemingly having been made. The dispatcher also conveyed a lookout for a person with a hat, a dark complexion and dark clothing who was believed to be *in front of* 2111 Suitland Terrace.

Officer French arrived on scene first, at 4:15 p.m., which was over 20 minutes after the 911 call. He observed no one in front of 2111 Suitland Terrace, nor any sort of indecent exposure, nor either of the 911 callers. His Body Camera picks up the sound of a fire alarm from within the 2111 Suitland Terrace building just before 4:16 p.m. His Body Camera also picks up the sound of a baby crying, and what appears to be a voice saying "someone call the police" and then a voice twice saying "get the fuck off of me." Mr. Dean, who does not have a dark complexion and who was not exposing himself, then exits the building by himself. After Mr. Dean opens the door and begins to exit, Officer French immediately seizes him by squeezing his arm, spinning him around, pushing him back into the building, and immobilizing him while trying to put him in handcuffs. At the time Officer French seizes Mr. Dean and forces him back into the building, there is a female in the hallway at the top of a few stairs -- some distance away – who is holding a baby and does not appear to be in any distress. Mr. Dean immediately advises the officer that the woman is the mother of his child. The woman then approaches Mr. Dean and Officer French without the baby yelling "give me my stuff!" She does not suggest in any way that any crime has been committed. Officers eventually yell at the woman in an effort to get her to go back inside with the baby, as she continues to approach the Officer and Mr. Dean making demands. Meanwhile, Mr. Dean struggles as Officer French continues to wrench his arms. Officer French eventually takes him down to the ground. Officers locate a firearm on the

ground where Mr. Dean was taken down that was not there before he was seized. Officers later search him outside of the building while he is still in custody and recover a magazine.

**LEGAL STANDARD**

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Violations of this guarantee are subject to the exclusionary rule, which requires courts to suppress evidence obtained through unconstitutional means. *See United States v. Weaver*, 808 F.3d 26, 33 (D.C. Cir. 2015). When a defendant has been seized or searched without a warrant, "the government bears the burden of justifying a warrantless arrest or search." *United States v. Wright*, 233 F. Supp. 3d 165, 171-72 (D.D.C. 2017). This is because "searches and seizures conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions." *United States v. Vinton*, 594 F.3d 14, 19 (D.C. Cir. 2010) (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993)).

**ARGUMENT**

**I. Mr. Dean was Illegally Arrested**

Probable cause is an essential prerequisite to an arrest, *Dunaway v. New York*, 442 U.S. 200, 213 (1979), and it exists only if the "arresting officer possesses information sufficient to warrant a prudent person in believing that the suspect has committed or is committing an offense." *United States v. Catlett*, 97 F.3d 565, 573 (D.C. Cir. 1996) (internal quotations and citations omitted). An investigatory stop under *Terry v. Ohio*, 392 U.S. 1 (1968) necessarily carries with it the right to "use some degree of physical coercion or threat thereof." *See United States v. Smith*, 373 F.Supp.3d 223, 238 (D.D.C. 2019) (internal citations and quotations

omitted). However, Officer French's use of force on Mr. Dean was unreasonable under the circumstances and elevated his encounter with Mr. Dean to an arrest. *See id*. ("[i]n deciding what degree of force is permissible, courts must look to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight . . . . the test is, ultimately, one of reasonableness.") (internal citations and quotations omitted). As then-Judge Brown Jackson noted in *United States v. Leake*, 19-CR-194 (KBJ), 2020 WL 3489523, "the investigatory stop-or-arrest assessment is a more nuanced one, requiring consideration of the officer's intent in stopping the citizen, the impression conveyed to the citizen as to whether he was in custody or only briefly detained for questioning; the length of the stop; the questions, if any, asked; and the extent of the search, if any, made." 2020 WL 3489523 at *10, *citing United States . White*, 648 F.2d 29, 34 (D.C. Cir. 1981) (internal quotations omitted).

Mr. Dean was arrested without probable cause as he opened the door and began to exit from 2111 Suitland Terrace. Officer French did not merely prevent him from leaving in order to ask him questions about what might be happening inside, Officer French did not have any reason to believe Mr. Dean was armed, and Mr. Dean did not even have a chance to attempt to flee. Officer French grabbed and squeezed his arm, spun him around and pushed him back into the building while trying to place him in handcuffs. At that point, the police had no information that suggested that Mr. Dean had committed a crime. He was not seen assaulting anyone, threatening anyone, or exposing himself to anyone, and was merely leaving the apartment building which was the subject of a 911 call from 20 minutes earlier. His arrest was unlawful and the evidence recovered must be suppressed as the fruit of that unlawful arrest. *Wong Sun v. United States*, 371

U.S. 471, 488 (1963) (evidence obtained through the exploitation of a Fourth Amendment violation the evidence must be suppressed).

**II. Mr. Dean was Illegally Stopped**

Law enforcement officers may temporarily detain individuals without a warrant pursuant to *Terry*, 392 U.S. at 1, 24, 26, 30. However, for the authority to seize and search a person under *Terry*, an officer must be able to "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 20-22. Anything less would "evaporate" "the protections of the Fourth Amendment," and "the people would be secure in their persons, houses, papers and effects, only in the discretion of the police." *Id*. (internal quotations and citations omitted). Accordingly, an officer must articulate more than a mere hunch. *Id*. In reviewing the lawfulness of a stop, "courts look to the record as a whole to determine what facts were known to the officer and then consider whether a reasonable officer in those circumstances would have been suspicious." *United States v. Devaugh*, 422 F.Supp.3d. 104, 110 (D.D.C. 2019), *citing United States v. McKie*, 951 F.2d 399, 401 (D.C. Cir. 1991 (per curiam). Assuming, *arguendo*, that Officer French's actions did not amount to an arrest, his seizure of Mr. Dean was made without reasonable, articulable suspicion.

"Officers with minimal information are permitted to approach individuals to investigate their hunches. But approached individuals are free to refuse to speak with officers or avoid them altogether. Officers must then continue to establish facts corroborating reports from the public and build on their hunches by other means." *Posey v. United States,* 201 A.3d 1198, 1202-1203 (D.C. 2019) (internal citations omitted). Officer French had *at best* a hunch that Mr. Dean was doing anything wrong – he did not observe him doing anything illegal or potentially illegal – he only observed him leaving 2111 Suitland Terrace, to which Officer French had

responded more than 20 minutes after a 911 call that was broadcast to officers as a call about an Indecent Exposure. Mr. Dean was not with a second male, he was not exposing himself, and his complexion differed from that provided to the 911 dispatcher. At the time he grabbed Mr. Dean, Officer French had no information to suggest Mr. Dean had assaulted anyone or done anything wrong. He asked no questions of anyone and did no additional investigation. The fact that Mr. Dean did not immediately yield to Officer French's seizure is of no moment. In *United States v. Freeman*, 735 F.3d 92 (2nd Cir. 2013), the NYPD received a call that a person was possibly armed with a gun and was "arguing with a female" at a particular intersection. *Id*. at 94. Upon seeing Mr. Freeman, who fit the evolving description of the person, two officers separately placed a hand on Mr. Freeman's elbow to stop him from walking, which Mr. Freeman "shrugged off" each time. *Id.* at 95. At that point, one of the officers grabbed Mr. Freeman by the waist and brought him to the ground after a brief struggle. *Id*. at 95-96. The Second Circuit found that any justification for the stop of Mr. Freeman had to *precede* the officers' grabbing him and taking him down. The Court found that Mr. Freeman's efforts to shrug off or get away from the officers failed to establish reasonable suspicion because he did not attempt to flee *prior to* being seized and it found that his struggle with the officers as they took him to the ground did nothing to generate reasonable suspicion after-the-fact. *Id*. at 96-97, 102. As in *Freeman*, Officer French immediately seized Mr. Dean as he was leaving the building, and Mr. Dean's reaction to that illegal seizure does not elevate the limited information Officer French had into reasonable, articulable suspicion. Officer French had insufficient information to reasonably believe Mr. Dean was involved in illegal activity, his seizure of him was unlawful, and the evidence recovered as the fruits of that seizure must be suppressed.

## CONCLUSION

For the reasons set forth above, and for such other reasons as this Court may determine at a hearing on this motion, Mr. Dean respectfully requests that this motion be granted and that the Court suppress the of all items seized as the result of the unlawful seizure.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

______/s/____________________
MICHAEL BEACH
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500 x5113
michael_beach@fd.org